## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHARLENE NEWSOME MANLEY, | : | Case No. 3:13-cv-233 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. |
| vs. | : | Ovington |
| | : | |
| CAROLYN COLVIN, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

This Social Security disability benefits appeal is before the Court on Plaintiff

Charlene Newsome Manley's statement of errors (Doc. 9), the parties' responsive

memoranda (Docs. 13, 14), the administrative record (Doc. 6), and the record as a whole.

At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not

disabled" and therefore not entitled to disability insurance benefits ("DIB") and

supplemental security income ("SSI").  (*See* Doc. 6, PageID # 47-68 ("ALJ's decision")).

### I.  INTRODUCTION

Plaintiff filed an application for DIB on January 3, 2007 and an application for SSI

on January 19, 2007.  (Doc. 6, PageID # 50).  She alleged that she became unable to work

beginning January 3, 2007 due to the following impairments: arthritis in hands, vascular

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

problems in legs, kidney stones, and stress.  (Doc. 6, PageID # 337, 367).  Her claims were denied initially and on reconsideration.  (Doc. 6, PageID # 50).  Plaintiff requested a hearing before an ALJ, which was held on February 11, 2010.  (*Id.*)  On May 28, 2010, the ALJ issued an unfavorable decision, finding that Plaintiff was not entitled to DIB or SSI benefits for the period from January 3, 2007 through May 28, 2010.  (*Id.*)  On July 27, 2010, Plaintiff requested review of the ALJ's May 2010 decision.  (Doc. 6, PageID # 217).

On August 6, 2010, Plaintiff filed another application for benefits.  (Doc. 6, PageID # 50).  In her August 2010 application, Plaintiff alleged that she became unable to work beginning January 4, 2007 due to the following impairments: arthritis in hands and back, vascular problems in legs, kidney stones, depression, stress, bladder problems, concentration problems, painful tailbone, right wrist problems, lower back problems, stiffness of knees and toe, and problems in both hands.  (Doc. 6, PageID # 438).  Plaintiff's August 2010 application was approved on November 22, 2010 with a disability onset date of January 1, 2010.  (Doc. 6, PageID # 50).

In an order dated August 17, 2011, the Appeals Council responded to Plaintiff's request for review by vacating the ALJ's May 2010 decision, reopening the November 2010 favorable determination, consolidating both claims, and remanding the case to the ALJ for further proceedings.  (Doc. 6, PageID # 227).  The Appeals Council concluded that there were inconsistencies between the ALJ's May 2010 decision and Plaintiff's November 2010 award of benefits, which needed to be reconciled. (*Id*. at 220).  On remand, the ALJ was instructed to obtain additional medical and vocational evidence in

order to further consider Plaintiff's assessed limitations and occupational opportunities. (*Id*. at 228).

The hearing on the consolidated claims was held on January 19, 2012.  (Doc. 6, PageID # 252).  Plaintiff and a vocational expert testified, with Plaintiff's attorney in attendance.  (Doc. 6, PageID # 103).  On April 19, 2012, the ALJ rendered an unfavorable decision, finding that Plaintiff had not been under a disability as defined in the Social Security Act, and was therefore not entitled to benefits during the period from January 3, 2007 through the date of her decision.  (*Id*. at 68).  The ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform a restricted range of light and medium,[3] unskilled and semi-skilled work.  (*Id*. at 56, 65, 67).  At the time of the hearing, Plaintiff was 57 years old and had completed one year of college.  (*Id*. at 83).  She had also received special job training as a medical office assistant.  (Doc. 6, PageID # 371-72).

Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform for the period January 3, 2007 through August 2009.  (Doc. 6, PageID # 62). Further, from August 2009 through April 19, 2012, the ALJ found that Plaintiff could perform past relevant work as a unit clerk, which is classified as light exertion and semi-

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).

[3] The physical exertion designation of "medium" indicates that the work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  The Regulations further state that if a person can do medium work, it follows that she can also do light and sedentary work.  *Id*.

skilled.  (*Id*. at 66-68).  Therefore, the ALJ found that Plaintiff was not disabled.  (*Id*. at 63, 66, 68).  This decision became final and appealable on July 1, 2013, when the Appeals Council denied Plaintiff's request for review.  (*Id*. at 33).  Plaintiff seeks judicial review pursuant to section 205(g) of the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).

The ALJ's "Findings," which represent the rationale of her non-disability decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since January 3, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  For the time January 3, 2007 through August 2009, the claimant has the following severe impairments: mild degenerative disc disease and osteoarthritis; and depression (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  For the period January 3, 2007 to August 2009, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to: unskilled work of a low stress nature defined as no production-line or fast-paced duties; no more than occasional contact with coworkers, supervisors, or the public; and no more than frequent fine manipulation with the dominant right hand.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was … 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. For the period August 2009 through August 2011, the claimant had the following severe impairments: mild degenerative disc disease and osteoarthritis; mild hip osteoarthritis; spurring of the knees bilaterally; heel spurs; and some mild degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

12. For the period August 2009 to August 2011, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to no more than frequent fine manipulation with the dominant right hand.

13. The claimant is capable of performing past relevant work as a unit clerk classified as light exertion and semi-skilled.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

14. For the period August 2011 to present, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to: no more than frequent fine manipulation with the dominant right hand.

15. The claimant is capable of performing past relevant work as a unit clerk classified as light exertion and semi-skilled.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

16. The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2007, through the date of this decision (20 CFR 404.1520(f) and (g) and 416.920(f) and (g)).

(Doc. 6, PageID # 52-68).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not eligible to DIB or SSI.  (*Id.* at 68).

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate and explain the weight given to the medical opinions of Plaintiff's treating, examining, and consulting physicians; and (2) the ALJ erred in assessing Plaintiff's credibility.  (Doc. 9, PageID # 1158).

## II.  STANDARD OF REVIEW

The Court's inquiry on appeal is limited to whether the ALJ's non-disability finding is supported by substantial evidence and whether the correct legal standard was applied.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  Substantial evidence is more than a "mere scintilla" but less than a preponderance of the evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  In reviewing the ALJ's decision, the district court must look to the record as a whole and may not base its decision on one piece of evidence while disregarding all other relevant evidence.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  Even if the district court "might have reached a contrary conclusion of fact, the [ALJ's] decision must be affirmed so long as it is supported by substantial evidence."  *Kyle*, 609 F.3d at 854-855 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she was unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which has or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).

### III.  BACKGROUND

The record reflects that:

### A.  Physical Impairments

Plaintiff's medical records dating back to 1991 indicate that she suffers from recurrent kidney stones, requiring surgery and resulting in frequent visits to the emergency room due to the related pain.  (Doc. 6, PageID # 480-43; 492-97; 524-25; 536, 571, 590, 727).  In addition, Plaintiff has a long history of bladder problems and incontinence.  (*Id*. at 480, 515, 549, 711; Doc. 6, PageID # 1061).  Plaintiff's allegations of pain in her back, hands, wrists, ankles, and legs are documented sporadically throughout her medical records.[4]  (Doc. 6, PageID # 526, 553, 570, 575, 640, 646, 655, 762).  Additionally, Plaintiff has sustained numerous injuries from various accidents, including a fall in April 2007 that exasperated her lower back pain, another fall in August 2009 that fractured her right wrist, and a yard accident in August 2011 that caused a left tibial plateau fracture.  (*Id*. at 659, 870; Doc. 6, PageID # 1113).

---

[4] The administrative record includes nearly 700 pages of medical reports.  (Doc. 6).  The reports are largely repetitive and do not require extensive recitation in order to address the alleged errors at issue.

Plaintiff's medical records indicate that she has been a long-term patient of her primary care physician, Dr. James Derksen, since at least March 1994 through November 2011.  (Doc. 6, PageID # 822; Doc. 6, PageID # 1088).  Dr. Derksen's notes continually reference Plaintiff's pain in her hands, legs, knees, ankles, and lower back.  (Docs. 6, PageID # 750-822, 948-75, 1048-50).  In 2009, Dr. Derksen begins noting that patient suffers from arthritis but makes no reference to any objective medical tests for this determination.  (Doc. 6, PageID # 750, 759).

In October 2008, Dr. Derksen completed an Ability to Work form and a Basic Medical Questionnaire on behalf of Plaintiff for the Ohio Department of Job and Family Services ("ODJFS").  (*Id*. at 755, 759-60).  On the Ability to Work form, Dr. Derksen lists Plaintiff's limitations to include lifting, pulling, pushing, stooping, bending, crawling, climbing, standing, walking, sitting, grasping, fine manipulation, and sustaining concentration.  (*Id*. at 755).  On the Basic Medical Questionnaire, Dr. Derksen indicates that Plaintiff's reaching, repetitive foot movements, seeing, hearing, and speaking are not significantly limited; her ability to push, pull, and bend is moderately limited; and her handling is markedly limited.  (*Id*. at 759-60).  Dr. Derksen further opines that Plaintiff can stand, walk, and sit for no more than two hours total in an eight-hour workday, and in no more than fifteen-minute intervals.  (*Id*. at 760).  Finally, Dr. Derksen states that Plaintiff cannot lift any weight frequently and can lift up to five-pounds occasionally. However, Dr. Derksen provides no response to the form's inquiry as to "[w]hat observations and/or medical evidence led to [his] findings."  (*Id*.)  Dr. Derksen ultimately concludes that Plaintiff is unemployable.  (*Id*.)

8

On March 3, 2010, Dr. Derksen completed a Medical Source Statement on Plaintiff's behalf.  (Doc. 6, PageID # 950-55).  Dr. Derksen opines that due to chronic back, hip, and knee pain, Plaintiff can only lift and carry up to ten pounds occasionally, can sit for up to one hour without interruption, and can stand or walk for fifteen minutes at a time without interruption.  (*Id*. at 950-51).  Dr. Derksen further states that Plaintiff is restricted in the use of her hands and feet, and she can never climb ladders or scaffolds, crawl, crouch, stoop, or kneel.  (*Id*. at 952-53).

Plaintiff has a long history of complaints relating to urinary incontinence.  On November 20, 2007, Plaintiff underwent a cystourethroscopy and fluorourodynamic evaluation by urologist, Dr. Michael Yu.  (Doc. 6, PageID # 702-03).  Dr. Yu's preoperative diagnosis was stress urinary incontinence; however, his ultimate findings and postoperative diagnoses were low capacity overactive bladder and mixed incontinence.  (*Id*. at 702).  On January 7, 2008, Plaintiff saw urologist, Dr. Sharat Kalvakota.  Dr. Kalvakota noted that a pelvic examination revealed mild to moderate pelvic relaxation with stress incontinence.  (Doc. 6, PageID # 712).  During a follow-up appointment on February 4, 2008, Plaintiff indicated to Dr. Kalvakota that she did not want to undergo surgery to correct her incontinence and instead preferred treatment with medication.  (*Id*. at 711).

Dr. Damian M. Danopulos examined Plaintiff on July 16, 2007 and October 29, 2010, on behalf of the Ohio Bureau of Disability Determination ("BDD").  (Doc. 6, PageID # 659-69; Doc. 6, PageID # 1056-65).  Dr. Danopulos's notes from both examinations indicate that, despite Plaintiff's allegations of pain, she appeared for the

examination without ambulatory aid, moved in the examination room freely and with a normal gait, dressed and undressed normally, and got on and off the examination table without difficulty.  (*Id*. at 659-64; Doc. 6, PageID # 1056-58).

In 2007 Dr. Danopulos notes that Plaintiff showed full range of motion in upper and lower extremities, had no bilateral ankle or hand pain, no evidence of joint abnormalities (*e.g.*, heat, redness, swelling, or synovial thickening), and her spine was painless to pressure.  (Doc. 6, PageID # 659-64).  Dr. Danopulos further notes that Plaintiff is not currently taking any type of pain medication.  (*Id*. at 660).  Dr. Danopulos found, however, that Plaintiff's lumbar spine motions were restricted and painful and her lumbo-sacral spine x-rays showed slight levoscoliosis and minor spurring anteriorly at L3-L4.  (*Id*. at 663).  Further, Plaintiff's quadriceps muscles on the sides and her calves were sensitive by palpation, though arterial circulation was normal in both sides, in both feet, and no varicosities existed.  (*Id*.)  Finally, Dr. Danopulos noted that she suffered from exogenous versus morbid obesity.  (*Id*.)  Dr. Danopulos's 2010 evaluation reveals greater pain and restriction with regard to Plaintiff's knees, ankles, and lumbar spine. (Doc. 6, PageID # 1058-61).

Dr. Danopulos's objective findings from 2007 were: minor arthritis of the lumbar spine, bilateral leg neuralgias, bilateral hand arthralgias, prior trouble with infection of the left eye, frequent kidney stones, exogenous versus morbid obesity.  (Doc. 6, PageID # 660).  In conclusion, Dr. Danopulos stated that "[Plaintiff's] ability to do any work-related activities is affected from the chronic lumbar spine pain, plus her frequent kidney stone problems … [and] exogenous versus morbid obesity."  (*Id*.)

10

Dr. Danopulos's objective findings from 2010 were many: stress incontinence which had become general incontinence, right hand weakness with very mild if any right-sided carpal tunnel syndrome, minimal lumbar spine arthritic changes, bilateral knee and ankle arthralgias with Achilles tendon neuralgias, exogenous versus morbid obesity, and depression.  (Doc. 6, PageID # 1061).  In conclusion, Dr. Danopulos stated that Plaintiff's ability to do any work-related activities is affected in a negative way from the combination of her exogenous versus morbid obesity, incontinence, minimal lumbar spine arthritic changes and bilateral knee, ankle and right hand arthralgias.  (*Id*.)

### B.  Psychological Impairments

Plaintiff's medical records indicate that she suffers from depression.  (Doc. 6, PageID # 675, 705).  Plaintiff saw Dr. Ieva Veveris from September 2007 to October 2009.  (Doc. 6, PageID # 823-53).  Dr. Veveris completed a Mental Assessment form in September 2009.  (*Id*. at 854-55).

On July 20, 2007, Plaintiff underwent a psychological evaluation by Ty Payne, Ph.D., at the BDD's request.  (*Id*. at 671-75).  Dr. Payne diagnosed Plaintiff with "major depression, recurrent."  (*Id*. at 675).  He further noted that Plaintiff's major depression would moderately impair her ability to: relate to others, including fellow workers and supervisors; concentrate and pay attention as is required for most employment; and withstand the stress and pressure of day-to-day work activity.  (*Id*.)

Plaintiff underwent an additional psychological evaluation by a different BDD psychologist, Mel Zwissler, Ph.D., on August 6, 2007.  (Doc. 6, PageID # 676).  Dr. Zwissler considered the four broad functional areas for evaluation of mental disorders set

forth in the disability regulations and in section 12.00C of the Listing of Impairments. (*Id.* at 686). He determined that Plaintiff experienced mild restrictions in daily living activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration. (*Id.*) Dr. Zwissler also indicated that the evidence does not establish the presence of the regulation's "C" criteria. (*Id.* at 687).

On December 5, 2007, Dr. David Demuth reviewed the record evidence and affirmed Dr. Zwissler's ultimate findings. (*Id.* at 709).

## C. Opinion of Reviewing Physicians

Medical consultant, Dr. Rebecca R. Neiger, provided a Physical Residual Functional Capacity Assessment (the "RFC Assessment") regarding Plaintiff on August 23, 2007.[5] (Doc. 6, PageID # 694). Dr. Neiger found that Plaintiff could lift and/or carry (including upward pulling) up to 20 pounds occasionally and 10 pounds frequently, could stand and/or walk with normal breaks for about 6 hours in an 8-hour workday, and could sit for with normal breaks for about 6 hours in an 8-hour workday. (*Id.* at 695). Dr. Neiger stated further that Plaintiff's ability to push and/or pull, including operation of hand and foot controls, was unlimited. (*Id.*) Dr. Neiger opined that Plaintiff had no manipulative restrictions, as her exam results showed normal grip, pinch, manipulation, fine coordination, and strength in both hands. (*Id.* at 695, 697). Dr. Neiger found that

---

[5] The RFC Assessment form specifies that the term "occasionally" means "occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)." (Page ID # 300). The term "frequently" means "occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)." (*Id.*)

Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; however, she could never use a ladder, rope, or scaffold. (*Id*.) Dr. Neiger stated that Plaintiff had no other visual, communicative, or environmental limitations. (*Id.* at 697-98). Dr. Neiger's findings are based on her review of Dr. Danopulos's July 2007 examination of Plaintiff. (*Id*. at 695).

On December 6, 2007, Dr. Jeffrey Vassiloff reviewed the evidence and affirmed Dr. Neiger's opinion as written. (*Id*. at 710).

## IV.  ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate and explain the weight given to the medical opinions of Plaintiff's treating, examining, and consulting physicians; and (2) the ALJ erred in assessing Plaintiff's credibility. (Doc. 9, PageID # 1158). Plaintiff's argument that the ALJ's decision is not supported by substantial evidence is well taken. Accordingly, the undersigned declines to address the argument regarding Plaintiff's credibility at this time.

In making an RFC assessment, the ALJ must consider all of the Plaintiff's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). Particularly when the record evidence provides "conflicting opinions from various medical sources, it is the ALJ's function to evaluate the medical evidence and determine Plaintiff's RFC." *Swett v. Comm'r of Soc. Sec.*, 886 F.Supp.2d 656, 660 (S.D. Ohio 2012) (citations omitted).

In evaluating the medical evidence, the Regulations state that a treating doctor's opinion must be given "controlling weight" if "well-supported" by objective evidence and if it is not inconsistent with other substantial evidence of record.  20 C.F.R. § 1527(d)(2).  More weight is generally given to treating sources because they can provide a detailed, longitudinal picture of one's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from objective findings alone or from reports of individual examinations such as consultative examinations.  *Id.*  To determine how much weight to give an opinion, the ALJ "must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing 20 C.F.R. § 1527(d)(2)).

If an ALJ rejects the opinion of a treating physician, she must articulate "good reasons" for doing so.  *Wilson*, 378 F.3d at 544.  "Good reasons" are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p.  An ALJ's failure to follow these procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  However, there are scenarios "where the Commissioner has met the goal of Section 404.1527(d)(2) – the provision of the

procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547; *see, e.g., Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement, the ALJ met the goal by indirectly attacking the consistency of the medical opinions).

In the instant case, the ALJ fails to account for all impairments because she discredits many of the medical opinions, with the exception of Dr. Danopulos's evaluations.  Further, the ALJ fails to provide "good reasons" for her decision to discredit these medical opinions.

First, the ALJ explains that Plaintiff's "wrist fracture, unsupported diagnosis of osteoarthritis of the hands, and bladder and bowel incontinence do not have more than a minimal limitation on [her] ability to perform basic work activity."  (Doc. 6, PageID # 54).  With regard to Plaintiff's bladder incontinence, the ALJ appears to take issue with Plaintiff's decision to pursue prescription remedies rather than surgery.  (*Id*. at 53-54). Yet this decision by itself is not probative of the severity of Plaintiff's bladder incontinence. Furthermore, the ALJ errs by failing to articulate why the impairment is not severe, considering its extensive documentation throughout Plaintiff's medical records. In fact, the ALJ even notes that two urologists found Plaintiff to suffer from "low capacity overactive bladder" as well as "<u>significant</u> stress incontinence."  (*Id*.) (Emphasis supplied).  Plaintiff's incontinence is also described by Dr. Danopulos as having a negative impact on her ability to do work-related activities. (Doc. 6, PageID # 1061). Accordingly, the ALJ's ultimate conclusion appears contrary to the record evidence.

Additionally, Plaintiff's medical records indicate that incontinence plays a role not only in her physical ability to perform work, but also in her mental state and willingness to be out in public.  In making her RFC determination, the ALJ fails to address the impact these additional problems have on Plaintiff's work abilities.  Furthermore, the ALJ appears to conflate Plaintiff's recurrent kidney stones with her bladder incontinence. (Doc. 6; PageID # 53-54).  Considering that the vast majority of Plaintiff's voluminous medical records are dedicated to her kidney problems and related pain, the ALJ failure to address the impairment with any detail is inexplicable.  *Cf. Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

Next, the ALJ states that "the overall evidence of record" supports a finding that Plaintiff could perform a modified range of medium exertion work for the period from January 3, 2007 through August 2011.  (Doc. 6, PageID # 57, 65).  However, the only medical evidence that the ALJ uses in support of this finding is that of Dr. Danopulos. (*Id*. at 57-58).  The problem, however, is that Dr. Danopulos's evaluation is not stated in terms of the Regulation's definition of physical exertion requirements.  As previously noted, the Regulations define "medium work" as requiring an individual to lift up to fifty pounds at a time and frequently lifting and carrying up to twenty-five pounds.  20 C.F.R. § 404.1567(c).  Dr. Danopulos never makes this determination.  His opinion thus fails to constitute substantial evidence in support of the ALJ's finding that Plaintiff could

perform a limited range of medium work.  Furthermore, reviewing physician, Dr. Neiger, relies upon Dr. Danopulos's findings and, in doing so, actually finds that Plaintiff can do no more than <u>light</u> work.  Dr. Neiger's findings are then affirmed by Dr. Vasiloff. Curiously, however, the ALJ discredits both Dr. Neiger's and Dr. Vasiloff's opinions as being "not credible in light of the clinical and radiological evidence in the record."

With regard to the opinions of Plaintiff's treating physician, Dr. Derksen, the ALJ finds his "multiple opinions to be less than credible as they are contradictory, not supported by any diagnostic evidence, and contravene the medical evidence of record." (Doc. 6, PageID # 60).  The ALJ further notes that "Dr. Derksen's long-standing treatment of [Plaintiff] is acknowledged however, <u>his complete lack of diagnostic evidence</u> undermines his opinions."  (*Id.*) (Emphasis supplied).  First, although Dr. Derksen's medical evaluations certainly change over time, the progression is not necessarily contradictory.  Second, while the Court acknowledges that not all of Dr. Derksen's notes refer to supporting medical tests, the ALJ's determination that his opinions completely lack diagnostic evidence is a gross overstatement and not supported by substantial evidence.  Indeed, the record reflects that many of Plaintiff's diagnostic tests and visits to medical specialists are done at Dr. Derksen's referrals.

The ALJ's reference to inconsistencies between the discredited medical opinions and the record evidence is disingenuous.  Despite her rhetoric, it is apparent that the ALJ's evaluation of the medical evidence begins with the premise that Dr. Danopulos's opinions are the standard by which all others must be assessed.  This is simply not a "good reason" to discredit the opinions of all other physicians, particularly Plaintiff's

treating physician, Dr. Derksen.  Furthermore, by discrediting the vast majority of Plaintiff's medical records, the ALJ fails to thoroughly account for all impairments – severe and not severe -- as is required in making an RFC assessment.

Accordingly, the ALJ's decision is not supported by substantial evidence.

## V.     REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or her factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) reassess Plaintiff's residual functional capacity; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether she was under a disability and thus eligible for Disability Insurance Benefits and/or Supplemental Security Income.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **VACATED**;

2. The case be **REMANDED** for further proceedings in order for the Administrative Law Judge to reassess her RFC determination;

3. This case be **REMANDED** to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

August 15, 2014


s/ Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).